[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10803
Non-Argument Calendar
_____

Agency No. A087-658-310

EVGHENI SCURTUL,
ALISA STUDIONOVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 5, 2012)

Before TJOFLAT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Evgheni Scurtul and his wife, Alisa Studionova, who are natives and

citizens of the Republic of Moldova ("Moldova"), seek review of the Board of

Immigration Appeals' ("BIA") decision, affirming the Immigration Judge's ("IJ") order finding them removable and denying their application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"). On appeal, they argue that Scurtul was persecuted by the Moldovan government based on his political beliefs, and, as such, he has a well-founded fear of future persecution. For the reasons set forth below, we deny the petition.

## I.

Scurtul and Studionova entered the United States in June 2009, and May 2009, respectively, and remained without authorization after their temporary visas expired. In September 2009, they submitted an application for asylum, withholding of removal, and CAT relief based on Scurtul's political opinion.

At the removal hearing, Scurtul testified that, on April 7, 2009, he participated in a political meeting regarding allegedly false Moldovan election results. The communist government sent police to disperse the meeting, and when Scurtul attempted to escape, police grabbed him, threw him into a bus, and beat him. Scurtul's leg was badly injured, and he had bruises all over his body. The next day, Scurtul sought medical treatment, and he was required to wear a cast on

2

his leg for ten days.  After this incident, the police sent him two notices to appear for an interrogation, but he did not do so because he was afraid.

On cross-examination, Scurtul stated that approximately 10,000 people attended the 2009 political rally.  He further testified that police "threw [him] off the bus" 15 minutes after they grabbed him.  Upon questioning from the IJ, Scurtul indicated that he was not a leader of the protest.

Among other exhibits, the government submitted the U.S. Department of State's 2009 Human Rights Report on Moldova, which indicated that Moldovan authorities had pursued 46 criminal cases against police officers accused of abuse during April 2009 demonstrations, and on April 15, 2009, President Vladimir Voronin announced a "total amnesty" for anyone facing administrative charges related to the demonstrations.

The IJ issued an oral decision, denying Scurtul's asylum application and finding that: (1) he had not suffered past persecution; and (2) he had failed to establish an objectively reasonable, well-founded fear of future persecution in Moldova.  As to past persecution, Scurtul had merely sustained an ankle injury, and he was treated on an outpatient basis.  Further, the injury was not so severe that he needed immediate medical treatment, as he waited until the following day to seek medical care.  Although Scurtul was required to wear a cast for ten days, his

3

testimony and appearance during the asylum hearing established that he had not sustained a lasting or long-term injury. Additionally, Scurtul was only detained by police for 15 minutes, and considering all of his allegations, he failed to allege acts that rise to the level of persecution.

As to future persecution, the IJ found that several factors undermined Scurtul's contention that, if he returned to Moldova, he would be immediately identified and persecuted. Specifically, evidence established that: (1) Scurtul was only one of 10,000 protestors on April 7, 2009, and he was not a leader of the protest; (2) he was allowed to leave after 15 minutes of detention, which rebuts his contention that police would still be looking for him; and (3) no police action was taken when Scurtul ignored the subpoenas to appear for an interrogation. Additionally, the Human Rights Report established that the Moldovan president had announced a "total amnesty" for anyone facing administrative charges related to the April 2009 protest, and the Moldovan government had made efforts to punish the police abuse related to the protest. Thus, under the totality of the circumstances, Scurtul had failed to establish an objectively reasonable, well-founded fear of future persecution. Because he failed to sustain the lower burden for asylum relief, Scurtul necessarily failed to establish his eligibility for withholding of removal. Finally, as to CAT protection, there had been no testimony that Scurtul would be tortured by, or with the consent of, a

4

Moldovan government official if he returned to Moldova.

The petitioners appealed to the BIA, and after the BIA conducted a *de novo* review, it dismissed the appeal. The BIA agreed with the IJ that Scurtul had not suffered past persecution because he was only detained by police for 15 minutes, and his injures required only outpatient medical treatment. The BIA also agreed with the IJ's finding that Scurtul had not established a well-founded fear of future persecution because the police released him after 15 minutes, and although he had received two notices to appear for questioning, the record did not indicate that an arrest warrant had been issued. For these reasons, the BIA found that Scurtul failed to demonstrate his eligibility for asylum or withholding of removal. The BIA also concluded that Scurtul failed to establish eligibility for CAT protection.

## II.

We review the BIA's decision, but where the Board expressly adopts or agrees with the IJ regarding an issue, we review the decisions of both the IJ and the BIA regarding that issue. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, the BIA conducted a *de novo* review, and agreed with the IJ that Scurtul failed to establish past persecution or a well-founded fear of future persecution. Therefore, we review both the IJ's and BIA's decisions on those issues. *Id.*

We review the IJ's and the BIA's factual determinations under the highly

deferential substantial-evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1350-51 (quotation omitted). To reverse a finding of fact by the BIA or the IJ, we must conclude that "the record not only supports reversal, but compels it." *Id.* at 1351. We review the IJ's and the BIA's legal conclusions *de novo. Id.* at 1350. Additionally, an appellant abandons an issue by failing to offer any arguments on that issue. *Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

An alien may receive asylum in the United States if he is a "refugee" within the meaning of the INA. *Id.* at 1230. The INA defines a refugee as a person who cannot return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). Thus, to be eligible for asylum, an alien must establish, with credible evidence, either past persecution or a well-founded fear of future persecution, on account of a protected ground. *Sepulveda*, 401 F.3d at 1230-31.

The standard for establishing eligibility for withholding of removal is substantially the same as that for asylum. *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (describing the standard for withholding of removal). The only relevant difference is that an alien seeking withholding of removal must demonstrate

6

a "more likely than not" probability of future persecution, which is a more stringent standard than the "well-founded fear" standard required for asylum. *See id.*; *Sepulveda*, 401 F.3d at 1231-33. Consequently, an alien generally cannot qualify for withholding of removal if he is unable to meet the lower standard of proof for asylum. *Sepulveda*, 401 F.3d at 1232-33; *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1292-93 (11th Cir. 2001). "To establish eligibility for CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government officials if returned to the designated country of removal." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010).

We have explained that persecution "is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and. . . mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations and alteration omitted). For example, we have rejected a claim of persecution where the petitioner was arrested for participating in a student demonstration, interrogated and beaten for five hours, detained for four days, and monitored by authorities after his release. *Kazemzadeh*, 577 F.3d at 1353; *see also Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding that an alien did not suffer persecution where authorities detained him for five days, forced him to watch re-education materials, made him stand in the sun for two hours,

7

and, after his release, monitored him and occasionally searched his residence).

If an applicant fails to demonstrate past persecution, he may still qualify for asylum relief by establishing a well-founded fear of future persecution. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). However, the applicant's fear of persecution must be "subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289. In most cases, the objective prong can be fulfilled either by establishing past persecution or that the alien has a "good reason to fear future persecution." *Id.* In addition to providing an independent avenue for asylum eligibility, an applicant who makes a showing of past persecution benefits from a rebuttable presumption of a well-founded fear of future persecution. *De Santamaria*, 525 F.3d at 1007. The applicant must also show a nexus between a statutorily protected ground and the feared persecution, and he can do so by presenting specific, detailed facts showing a good reason to fear that he will be "singled out" for persecution on account of the statutorily protected factor. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).

In this case, substantial evidence supports the IJ's and the BIA's conclusion that Scurtul did not suffer persecution while living in Moldova. Specifically, Scurtul's testimony established that, after he participated in a large political protest on April 7, 2009, he was detained and beaten by police, resulting in a leg injury and

8

bruises. However, the beating lasted only 15 minutes before he was released, and he did not seek medical treatment until the following day. While he was required to wear a cast for ten days, he did not testify that he stayed overnight in the hospital or that he suffered any long-term injuries. On appeal, Scurtul argues that the incident caused him to suffer "psychological trauma," but he fails to identify any evidence to support this claim, and during his testimony before the IJ, he only discussed his physical injuries. In sum, the record does not establish that the April 2009 incident was sufficiently extreme to show past persecution, as we have held that much worse treatment than a 15-minute detention and beating was insufficient to constitute persecution. *See e.g. Kazemzadeh*, 577 F.3d at 1353 (concluding that a four-day detainment and a five-hour interrogation and beating was insufficiently severe to constitute persecution); *Zheng*, 451 F.3d at 1289-91 (concluding that a five-day detainment did not rise to the level of persecution).

As to future persecution, Scurtul suggests that, because he was summoned for a police interrogation after the April 2009 incident, he would be immediately arrested and persecuted if he is removed to Moldova. However, this evidence, without more, does not establish that Scurtul had an objectively reasonable, well-founded fear of future persecution. *See Al Najjar*, 257 F.3d at 1289. To the contrary, his own testimony suggested that he is unlikely to be "singled out" for persecution if he

9

returns to Moldova. *See Forgue*, 401 F.3d at 1286. Specifically, although he had been active in political organizations, approximately 10,000 protestors participated in the April 2009 protest, and he was not one of the protest's leaders. Further, although Scurtul had been summoned to a police interrogation in 2009 and his parents had been threatened in November 2010, evidence also showed that the Moldovan government had initiated criminal prosecutions against many of the police officers involved in dispersing the April 2009 protest, and the government had declared a "total amnesty" for the protestors involved. Thus, the record supports the IJ and BIA's conclusion that Scurtul failed to establish an objectively reasonable fear of future persecution. *See Al Najjar*, 257 F.3d at 1289.

Because Scurtul has failed to establish eligibility for asylum, he also failed to qualify for withholding of removal. *See id.* at 1292-93. Furthermore, as to CAT protection, he never alleged before the BIA or in his brief to this Court that he would likely be tortured in Moldova by, or with the acquiescence of, government officials. *Todorovic*, 621 F.3d at 1324. Accordingly, he has abandoned his claim that he is eligible for CAT protection. *See Sepulveda,* 401 F.3d at 1228 n.2.

For the foregoing reasons, we deny Scurtul's and Studionova's petition for review.

**PETITION DENIED**.

10